# UNITED STATES BANKRUPTCY COURT
## for the
## DISTRICT OF MASSACHUSETTS

========================================
In Re:

    SOUTHCOAST EXPRESS, INC. and
    SKY VIEW LINES, LLC,

                  Debtors

\*
\*
\* Chapter 11
\* No. 05-18685 and
\* No. 05-18686
\* Jointly Administered
\*
\*
========================================

## PRELIMINARY DECISION ON MOTION OF N.O.B. ASSOCIATES FOR AN ORDER THAT THE AUTOMATIC STAY DOES NOT APPLY AND OTHER RELIEF

### I. Introduction

The matter before the Court is whether N.O.B. Associates, LLC ("NOB") is entitled to an order confirming that the automatic stay does not apply because of the alleged pre-petition termination of the lease (the "Lease").[1] Southcoast Express, Inc. ("Debtor") objects on the grounds that NOB's request is defective both procedurally and legally.[2] I held a non-evidentiary hearing and took the Motion and Objection under

---

[1] Motion of N.O.B. Associates For An Order That Automatic Stay Does Not Apply Pursuant To Bankruptcy Code Sections 362(b)(10) and 541(b)(2) Because the Subject Lease Was Terminated Prepetition and For Payments of Postpetition Administrative Obligations, Docket No. 181 (the "Motion").

[2] Opposition of Southcoast Express to Motion of N.O.B. Associates For An Order That The Automatic Stay Does Not Apply Pursuant to Bankruptcy Code Sections 362(b)(10) and

1

advisement. For the reasons stated below, I will schedule an evidentiary hearing to further consider the matter.

## II. Background

While the parties object to the many of the facts and the applicable law, the facts necessary to decide this preliminary matter are not in dispute. In 1972, NOB leased property in Norwell, MA (the "Premises") to Howard Johnson Company, Inc. ("Johnson") for a stated term, with options, to expire August 7, 2010, according to NOB, or February 11, 2014 in Debtor's view.[3] Johnson subsequently assigned its interest to The Ground Round, Inc. ("Ground Round"). Ground Round filed Chapter 11 proceedings in this Court in 2004.[4] In that case, I authorized Ground Round to assume the Lease and assign it to Debtor.[5] Debtor continues to operate a restaurant on the Premises.

The Lease provides that the Debtor would pay a base rent plus percentage rent, property taxes, insurance and utilities.[6] Debtor is required also to provide NOB with periodic financial information from which NOB can verify the amount of percentage rent due. NOB asserts that Debtor's total monthly obligations are in the range of $7,193.83 to

---

541(b)(2) Becase the Subject Lease Was Terminated Prepetition and For Payment of Postpetition Administrative Obligations (the "Objection")

[3] At this point in the proceedings it is not necessary for me to determine which view is correct.

[4] *In re* The Ground Round, Inc. *et al.*, Case No. 04-11235 (Bankr. D. Mass.).

[5] *Id.*, Docket No. 1295.

[6] Both parties describe the lease as "triple net."

2

$10,993.33.

On May 18, 2005, NOB's counsel sent a "notice of initiation of eviction proceedings" to Debtor specifying the various defaults which NOB contended existed including both monetary and other conditions. It continued:

> Unless South Coast cures all of the above-referenced lease defaults within thirty (30) days from your receipt of this letter, we have been instructed by the Landlord to commence eviction proceedings against South Coast.
>
> The Landlord further demands that South Coast pay to it interest on the rental due, reimburse it for expenses related to South Coast Express, Inc.'s defaults, including legal fees and provided in the lease.[7]

It appears that no cure was forthcoming. On June 21, 2005, NOB's counsel sent Debtor a "notice of termination of lease" which recited in part:

> Southcoast has not cured within 30 days the events of default referenced in the [previous] Letter. Because Southcoast has failed to cure the defaults, the Landlord hereby exercises its right of termination pursuant to Article XV of the Lease, Article VI.2 of the Lease, and G.L. c. 186 §11A.
>
> Southcoast is directed to conform to the provisions of Article VI.2 of the Lease, which requires (among other things) that, within 10 days, the Landlord and Southcoast execute an instrument canceling the Lease and that Southcoast deliver up the entire demised premises. If Southcoast shall fail to deliver said premises by that time, the Landlord intends forthwith to re-enter the premises by use of summary process (civil eviction) proceedings.[8]

NOB contends that the Debtor did not cure and that on July 18, 2005, it commenced an eviction proceeding in state court. The complaint was set for hearing on

---

[7] Motion, Ex. D.

[8] Motion, Ex. E.

3

September 19, 2005. On that same date, Debtor filed the present case seeking relief under Chapter 11 of the Bankruptcy Code. NOB then filed the Motion.

In the Objection, Debtor referred to facts relevant to whether the Lease had been properly terminated pre-petition such as whether the base rent had been paid, it was entitled to credits as a result of certain payments by Ground Round to NOB, its obligation to pay had abated, and the nonmonetary defaults in fact existed.

At the preliminary hearing on the Motion, I ruled that the Motion was procedurally proper.[9] I recognized that it mattered not that this motion was the reverse of the typical: a motion for relief with the alternative request that the stay did not apply.[10] I also ruled that NOB was the proper party to seek such relief. Further, at the hearing I explained that I have always ruled from the bench that under § 362(b)(10), a lease could have terminated under the terms of the lease and not solely by the expiration of the stated term of the lease. After urging that this interpretation of the statute was incorrect, counsel for the Debtor requested that he be afforded the opportunity to brief the issue as to

---

[9] *In re* Docktor Pet Centers, Inc., 1992 WL 189634 *2 (Bankr. D. Mass.), *reversed but affirmed on this point sub nom.* Ralls v. Docktor Pet Centers, Inc., 177 B.R. 420, 428 (D. Mass. 1995).

[10] "Where a landlord has properly terminated a debtor's lease prior to bankruptcy the landlord is entitled to relief from stay as the debtor has no property interest in the leasehold." *In re* Norwood Aviation, Inc., 47 B.R. 155, 157-158 (Bankr. D. Mass. 1985), *aff'd sub nom.* Bevilacqua v. Boston Metropolitan Airport, Inc. (*In re* Norwood Aviation, Inc.), 63 B.R. 68 (D. Mass. 1986). Moreover, it is procedurally proper to bring by motion a request for a determination that property is not property of the estate. *See e.g.* Ostrander v. Lalchandani (*In re* Lalchandani, 279 B.R. 880 (B.A.P. 1st Cir. 2002), *In re* Cybermedica, Inc., 280 B.R. 12 (Bankr. D. Mass. 2002)

4

Case 05-18685    Doc 325    Filed 02/13/06    Entered 02/16/06 12:29:36    Desc Main
            Document      Page 5 of 8

whether the Lease was properly terminated under Massachusetts law. It is that issue that I then took under advisement.

III. **Discussion**

Despite having given my ruling with respect to how this Court interprets 11 U.S.C. § 362(b)(10) at the hearing, I will take this opportunity to explain my conclusion. That section provides that the automatic stay does not apply to

> any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by *the expiration of the stated term of the lease* before the commencement of or during a case under this title to obtain possession of such property.[11]

Both parties vigorously argued at the hearing and in their pleadings that the case of *In re Policy Realty Corp.*,[12] is dispositive of the issue of whether the statute intends the temporal expiration or expiration under the terms of the lease.[13] In *Policy Realty*, the district court, in addition to examining § 365(b)(10), reviewed § 541(b)(2)[14] and

---

[11] 11 U.S.C. § 365(b)(10) (emphasis added).

[12] 242 B.R. 121 (S.D. N.Y. 1999) *aff'd* 213 F.3d 626 (table), 2000 WL 534365 (2nd Cir. 2000).

[13] The "vigor" of Debtor's position is expressed in language somewhat stronger than necessary. Parties that appear before this court are "cautioned to behave themselves and respond to pleadings respectfully, whether they mean it or not." *In re* Bank of New England Corp., 134 B.R. 450, 462 (Bankr. D. Mass. 1991).

[14] This statute excludes from property of the estate "any interest of the debtor as a lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before the commencement of the case"

§ 365(c)(3)[15] Judge Scheindlin held that "termination" as used in these statutes included the type of accelerated termination by default which terminates a lease as a matter of state law.[16] He concluded that the pre-petition accelerated termination by default notice and subsequent termination notice, in accordance with the terms of the lease, constituted the expiration of the stated term. He therefore ruled that the automatic stay did not apply to the lessors' post-petition actions.

In an unpublished opinion, the Second Circuit reached the same result as the district court and affirmed, but on different grounds. After looking at the pre-petition activities of the lessor, the court concluded that under New York law the lease had terminated pre-petition. It then concluded that because the lessee had no continuing property rights under applicable state law at the time it filed for relief,[17] no interest of the lessee in the lease could become property of the estate. It cautioned that "we express no opinion regarding the interpretation of the language of these provisions, and recognize that the discussion of these provisions in the district court's opinion . . . was *dicta*."[18] The difference between the opinions of the two courts is of little consequence. NOB's citation of *Policy Realty* in support of its position is hardly "seriously and grossly

---

[15] This statute bars the trustee from assuming or assigning a "lease of nonresidential real property [that] has been terminated under applicable law prior to the order for relief."

[16] 242 B.R. at 127-128.

[17] Butner v. United States, 440 U.S. 48, 54 (1979).

[18] 2000 WL 534265 **3.

6

miscited" as asserted by Debtor.[19]

While there is not a plethora of case law on the issue of how to interpret the undefined phrase "terminated by the expiration of the stated term of the lease", some cases support the Debtor's position.[20] The cases from this circuit, however, favor looking to state law to determine when the lease was terminated as opposed to looking to the end date of the lease.[21] After re-reviewing these cases, I am convinced that my interpretation of the statute is correct.

---

[19] If I were to step down off the curb and meet Debtor on its own level, I would say that its contention that *Policy Realty* had nothing to do with the applicability of the automatic stay, Supplemental Opposition, p.6, was a serious miscitation.

[20] *See e.g.*, In re DiCamillo, 206 B.R. 64, 68-70 (Bankr. D. N.J. 1997), In re Morgan, 181 B.R. 579, 583-84 (Bankr. N.D. Ala. 1994). *But see* In re Moore, 290 B.R. 851 (Bankr. S.D. Ala. 2003)

[21] *In re* Tiny's Cafe, Inc., 322 B.R. 224, 226 (Bankr. D. Mass. 2005) ("Under Sections 362 and 541 of the Bankruptcy Code, a lease that has been terminated for non-payment prior to the filing of bankruptcy is not property of the estate, and is thus not protected by the automatic stay."), *In re* T.A.C. Group, Inc., 294 B.R. 199, 202 (Bankr. D. Mass. 2002) (examining state law to determine effectiveness of landlord's pre-petition termination for purposes of 11 U.S.C. §§ 362(b)(10) and 541(b)(2)), *In re* Gromyko, 142 B.R. 20 (Bankr. D. R.I. 1992) (granting relief from stay as landlord terminated lease prepetition), *In re* Norwood Aviation, Inc. 47 B.R. 155 (Bankr. D. Mass. 1985), *aff'd* Bevilaqua v. Boston Metropolitan Airport, Inc., 63 B.R. 68 (D. Mass. 1986) (granting relief from stay as landlord terminated lease pre-petition and citing for support § 541(b)(2)). *See also* F.A.A. v. Gull Air, Inc. (In re Gull Air, Inc.), 890 F.2d 1255, 1262 (1st Cir. 1989) ("In this case, we need not decide the issue of whether a carrier's proprietary interest in an arrival or departure slot constitutes 'property of the estate' within the meaning of the Bankruptcy Code. . . . Even if a carrier's interest in a slot rises to the level of 'property of the estate,' the interest would cease to be 'property of the estate' when the interest expired by force of regulation. A carrier's interest in a slot is analogous to a debtor's interest in a lease which ceases to be 'property of the estate' when the interest terminates at the expiration of the stated term of such lease during the bankruptcy case. *See* 11 U.S.C. § 541(b)(2).")

## IV. Conclusion

The Debtor has raised significant questions, however, as to whether the Lease was properly terminated under Massachusetts law pre-petition. I cannot make such a determination based upon the pleadings which have been submitted. I will schedule a status conference to set discovery and briefing deadlines for an evidentiary hearing on the Motion and Objection in order that I may decide the issue of whether N.O.B. terminated the Lease pre-petition.

William C. Hillman
United States Bankruptcy Judge

Dated: February 13, 2006

COUNSEL APPEARING:

Todd A. Feinsmith, Erin N. Gannon, Brown Rudnick Berlack Israels LLP, Boston,
    Massachusetts, for movant.
William J. Hanlon, David J. Reier, Heidsha Sheldon, Seyfarth Shaw LLP, Boston,
    Massachusetts, for debtor

8